We move to the second case this morning. Daron Seymour-Reed v. DuPage County Forest Preserve. Good morning, Your Honors. May it please the Court. My name is Attorney Jamel Cunningham, and I am counsel for Appellant Daron Seymour-Reed. We are here to contest the District Court's granting of the defendant's motion for summary judgment in totality, disposing of Mr. Reed's race and gender discrimination claims under Title VII, under the Illinois Human Rights Act, and his retaliation claims. Because many of these elements overlap in these claims, I want to get right into the evidence here. And what caused Mr. Reed's termination? The defendant pro-offered that Mr. Reed was terminated because of his history of poor performance. The District Court specifically said that Mr. Reed failed to provide any evidence and specified that the evidence provided were bald conclusions in regards to the elements of his claims. So I want to talk about his history of poor performance. Well, the District uses performance evaluations, specifically uses a tool to document employee performance issues and goals and objectives. I think the District Court failed to consider or failed to give the appropriate weight to Mr. Reed's 2013 and 2014 evaluations. His 2014 evaluation shows that he was perfect, and I say perfect because he received a 100% that he meets expectations. The comments were specific as to his work accuracy, as to his willingness to step up and assist. There are no performance deficiencies noted in the actual tool that's supposed to show performance deficiencies. Now, what the defendant attempted to do after Mr. Reed's termination was use a series of meetings that occurred in 2013 and a series of memos that generated from those meetings to say, hey, he actually was deficient in his performance in 2013 because we mentioned performance issues here. Well, that's the District's side of the story. Mr. Reed's side of the story is that those meetings came about because he was making complaints about how he was being treated. Jack Hogan, one of his supervisors, actually documented in one of the memos that the meeting came about as a result of Mr. Reed addressing his own concerns. The same thing for 2014. Allegedly, Mr. Reed had poor performance in 2014, and again, the 2014 performance evaluation, which appears to be completed after his termination, shows his performance meets expectations. It specifies that he had minimal errors and so forth. So that evidence presented to a jury could conclude that the reasons for his termination are false, that he actually had no history of performance deficiencies, that these things are only being brought up now as performance deficiencies to dispute his claims of discrimination. Another reason for the termination was there was a suspension in 2014 that Mr. Reed allegedly yelled at his supervisor. Well, the defendants have already admitted in their verified response to the charge of discrimination at IDHR that yelling at a supervisor is not a disciplinary offense. There is a female employee who defendant admitted yelled at the same supervisor with the same title as Mr. Reed, but this person was not disciplined. The reason that they gave this, we argue, pretext is that, oh, well, this employee didn't have a history of discipline, so that's why we didn't discipline this employee. Well, Mr. Reed didn't have a history of discipline. And also, in August of 2014, this was the first time there was a documented performance issue. It was his first suspension, his first actual write-up. So this is his first disciplinary issue. So if it was the other employees, the female employees' first issue, it was only Mr. Reed who was disciplined on this first issue, and it shows disparate treatment. Mr. Reed was also disciplined, documented and disciplined and ultimately used for his termination, that he improperly used his cell phone and he violated the district's cell phone policy. This, again, is pretext. The district's policy on its face shows that employees are allowed to use their cell phones. They ask them to minimize it, but they're allowed to use their cell phones. Mr. Reed's evidence, his testimony, is that he checked the cell phone to check on his wife and his kids. Totally permissible. The reason why he used the cell phone, as we set forth beside the McKinney case, should be allowed to go to a jury to determine if it was an improper use. And, again, this was one of the reasons used for his termination. Mr. Reed also provided his own testimony that his supervisor came out and observed his female non-African American co-workers using their cell phones all the time. These employees were not disciplined, yet Mr. Reed was. And, finally, Mr. Reed was terminated allegedly because, again, he raised his voice at his supervisor and refused to go to a training. The evidence that the training was voluntary, that Mr. Reed had confirmed that he wanted to go to the training, that he would be at the training, should be submitted to a jury. Mr. Reed's testimony that he came in to put his bags down and was accosted by the supervisor, yelled at by the supervisor, telling him to get out of there and go to the meeting, a jury should be allowed to hear that to determine whether these reasons are actually true reasons for the termination or whether they're false and they're made up just to hide the discriminatory motive. There is a couple of other disciplinary issues that were brought up. Mr. Reed allegedly misplaced an invoice. Again, this is not documented anywhere in the 2013 and 2014 evaluations. It actually says that he's very meticulous, he's very accurate with minimal errors. And even if this were the truth, Mr. Reed provided evidence where one of his female co-workers committed a similar or same area by misprinting a check, she was not disciplined. There's also an instance where Mr. Reed was orally reprimanded for misusing district time. Mr. Reed... Mr. Cunningham, let me ask you a question about a lot of the points you're making, and I understand why, are focusing on the comparative treatment or lack of treatment by supervisors of co-workers of your client. Does the record contain, and if so, where in the record is the disciplinary history of those co-workers? There's Mr. Reed's testimony, and I was just getting to this point that, for example, his oral reprimand was done out in the open at the same time that these two female co-workers were observed laughing and also having side conversations. The supervisor during the short order only approached Mr. Reed and accused him of wasting district time. So apart from Mr. Reed's testimony about what was happening or not happening in the workplace, does the record contain, for example, the employment files of these other individuals? It doesn't contain any disciplinary actions against them, and we did make that allegation as one of our statements of undisputed material fact, and there was no disciplinary record provided to show that they were disciplined for these things. Moving forward really quickly to Mr. Reed's retaliation claims, there's plenty of evidence in the record that he engaged in protected activity. Admittedly, the 2011 comment, complaint about the whip is far out in terms of— Are you saving any time for rebuttal? I will. Thank you. Ms. Callaway. Good morning. Good morning. May it please the Court, my name is Lisa Callaway, and I represent the Forest Preserve District of DuPage County. We're here before you today asking for you to uphold Judge Norgal's granting of our motion for summary judgment on the remaining counts of plaintiff's appellant's complaint. To be clear, there are two complaints of harassment. One has to do with race, one has to do with gender, and then there was also a complaint of retaliation. I do want to address the plaintiff appellant's arguments, but I'm going to get to those in the course of my arguments. I want to focus on two issues today. The first is the lack of evidence that was provided, and that's in the record, to support the claims of race and gender discrimination. And I also want to focus on the plaintiff appellant's established pattern of poor performance and insubordinate attitudes towards his supervisors. The only evidence that was provided of any discriminatory act during his employment were two particular issues. The first was a claim that he had overheard the word whip. And when this was brought to the attention of the Forest Preserve District, HR immediately did an investigation. And what they found was that this was a comment that was made by a non-supervisory employee who was talking to her boss, a conversation that the plaintiff was not involved in, and she was teasing her boss claiming that he was being whipped into shape by his wife who had put him on a very serious physical exercise regimen and eating regimen. The other comment came about almost two years later, and that was when another non-supervisory co-worker had come across Mr. Seymour-Reed while he was coming in with a bag lunch, and the employee said, what kind of chicken do you have? Again, Mr. Seymour-Reed complained an investigation was immediately conducted by Human Resources, and it was found that the comment was not racially motivated and it was not in violation of the district's policy. That was the last comment, the last complaint that was made prior to almost two years later, Mr. Seymour-Reed's termination. There were no allegations of any harassing or discriminatory comments made by any supervisors, and certainly not the supervisors who were responsible for the discipline and ultimate termination. This court has previously ruled that speculation as to an employee's state of mind, he claimed he believed that this conduct was discriminatory, and this court has ruled that speculation as to an employee's state of mind is not sufficient to create a genuine issue of material fact. There were no other complaints made by him, despite the fact that he was told if he had any other concerns, he should go to his manager, Jack Hogan, or he should go to HR with those complaints. With respect to the gender discrimination claim, there was no complaint during his employment that he was subjected to any kind of gender discrimination, other than he made the comment that he was the only male in the department, the only non-supervisory male. When asked during his deposition, and this is, of course, in the record, whether there were any supporting documentation, witnesses, any evidence at all of sex discrimination, he simply responded, no, that was it. You heard quite a bit from the plaintiff's lawyer about his performance and what she perceived as a lack of documentation on his performance. The reality is there's some pretty extensive documentation here. The district has a philosophy of trying to implement corrective action, trying to work with somebody, rather than going directly to disciplinary action. He received, over a period of about a year, there were several meetings regarding some of his insubordinate comments to his supervisor. He was in those meetings. Management was in those meetings. And there were discussions about his performance issues, his refusal to perform some of his job functions. Those meetings were documented in memoranda. They were not disciplinary. They were counseling, trying to get him to turn around. And all of that, of course, is in the record. We get to August of 2014, about four months before the plaintiff's termination, when he continues his insubordinate behavior. We're seeing the same types of behavior repeatedly. And the issue of the excessive cell phone, which I want to address, this was a mandatory training. Counsel misspoke. It was not something that he chose to go. His supervisor required him to go to it. It was a six-hour mandatory training. And it was reported by a third party, not one of our employees, a third party contractor who was holding the training, that the plaintiff was on his phone entirely throughout the six-hour training. He didn't participate. And that was the source of the discipline. A second suspicion happened in December, where, again, he was insubordinate to his supervisor. He was not, and I want to clarify something else. He was not, first of all, the plaintiff's attorney refers to performance appraisals in 2013 and 2014, where he was perfect. To clarify, he wasn't perfect. Perfect would be an excellent or exceeds. He met expectations. It's the middle of the road. He was doing what he needed to do, but no more, certainly. Was perfect a formal determination? I mean, was the term perfect, as you use it, is not quite how you described it. Tell me what the levels of performance are. There's a meets expectations and exceeds expectations, and a does not meet expectations. Perfect isn't one of them. No, perfect is not one of them, no. To clarify, the plaintiff's counsel said that there was a performance appraisal that was done in 2014 that was not completed until after his termination. That is not correct. There was a 2015 performance appraisal that was not completed until after his termination. His 2014 performance appraisal actually showed that he did not meet expectations in several of the categories. And so her testimony on that, or her statement on that, was not true. There was no evidence in the record, and certainly Judge Norgel found this, to at all support any allegations that there was with respect to the cell phone use in particular, but specifically with respect to comparables. And that was where the district court judge really found that there was a problem here, that there was no evidence provided on comparables at all. And in fact, when asked if he could provide similarly situated individuals who were treated differently than him, who were of a different race and a different sex, he stated during his deposition that there were no similarly situated employees who did exactly the same thing as him. So the question about whether there's any evidence in the record to support that specific issue, of course there was not. Certainly, the court's reasoning in Ortiz v. Werner Enterprises states that the relevant inquiry for determining whether to enter summary judgment is whether the evidence would permit a reasonable fact finder to conclude that the plaintiff's gender and race in this case caused the discharge or other adverse employment action. And of course, the evidence in this case was that there was a pattern of discipline. There was a pattern of warnings and counselings that was followed by discipline for the same types of behavior that were repeated over and over again. The allegations of discrimination, the only two, and that's all there was during his employment, were a year and a half prior to his termination. At no time when he was being disciplined or counseled did he claim that he believed that he was being discriminated against or that it was a result of the fact that he had made these previous claims. So we believe that under the McDonnell-Douglas test, which Judge Norgal applied in this case, that the plaintiff has failed to satisfy that he reasonably performed the job in accordance with the employer's reasonable job expectations, or, of course, he was unable to provide that similarly situated employees were treated differently. There was no evidence of any kind of discipline that was issued to anybody else for the same type of behavior. The reason being is nobody else in that department or elsewhere within the district had a pattern of poor performance and continued insubordination by their supervisors. So, in conclusion, we would like to ask that, we respectfully request that the court affirm the district court's summary judgment in this case. Thank you. Ms. Cunningham? Your Honors, if you look at the record in the case, you'll see that Mr. Reed did complain on 7213 of discrimination, and he also filed a charge of discrimination in September of 2014, naming Schroeder as one of the people who discriminated against him, and he was terminated three months later. This argument about the lack of evidence because of plaintiff's deposition testimony, prior to that question being asked, which was only specific to sex discrimination... What was that instance of discrimination? The complaint was on 7213. In a meeting, he complained of discrimination, and also he filed a charge of discrimination in September 2014. And what was the nature of the charge? The nature of the charge, I believe, was sex and gender. I believe it was sex and gender. I'm sorry, sex and race. My apologies. And, as argued, I don't think the deposition testimony that the district court is allowed to exclude all of the other evidence in the record. Documents have been exchanged. Interrogatory answers have been exchanged where he specified who was treated better than him and how they were treated better than him. A layperson's deposition answer as to, do you have any evidence, does not allow the district court to exclude all of the evidence that's in the record. He's not an attorney, and the evidence was there. The evidence was there that he engaged in protected activity as late as September 2014, and, as I argued earlier, that the reasons given for the termination were pretext. Thank you. Thank you, counsel. Thanks to both counsel, and the case is taken under advisory.